UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

BRYAN BYERS, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

THE ANDREWS GROUP LLC, an Ohio company, and PLUM TREE REALTY LLC, an Ohio company,

Defendants.

NO.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiff Bryan Byers ("Plaintiff Byers" or "Byers") brings this Class Action Complaint and Demand for Jury Trial against Defendant The Andrews Group LLC ("Defendant Andrews Group") and Defendant Plum Tree Realty LLC doing business as Plum Tree ("Defendant Plum Tree") to stop the Defendants from violating the Telephone Consumer Protection Act by sending telemarketing text messages to cellular telephone numbers *without consent*. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Byers, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Bryan Byers is a resident of Columbus, Ohio.

2. Defendant Andrews Group is an Ohio registered company headquartered in Columbus, Ohio. Defendant Andrews Group conducts business throughout this District, Ohio, and the U.S.

3. Defendant Plum Tree is an Ohio registered company headquartered in West Chester, Ohio. Defendant Plum Tree conducts business throughout this District, Ohio, and the U.S.

**JURISDICTION AND VENUE**

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants since the Defendants conduct business in this District and the solicitations from which this case arises related to the business that Defendants conduct in this District. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com (last visited on October 14, 2021).

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

17. In recent years a troubling trend has surfaced in the real estate industry where real estate agents are cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

18. This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls without their consent and in violation of the TCPA.

**COMMON ALLEGATIONS**

19. Defendant Andrews Group is a real estate company that assists consumers in selling their properties.[3]

20. Defendant Andrews Group works in collaboration with Defendant Plum Tree and uses their logo throughout their website and other material:



[4]

21. Defendant Andrews Group sells service packages in the range of $299 to $599 to consumers to assist them with selling their properties. Defendant places outbound telemarketing calls and text messages to solicit consumers to buy these packages.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://theandrewsgroupllc.com/
[4] *Id.*

22. Defendant Plum Tree trains its agents like Andrews Group to use telemarketing tools and technology to place cold calls, including automated text messages, to increase their outreach. Defendant Plum Tree shares a lot of material which shows how they train and promote cold calling, including use of text messaging services, among its real estate agents, for instance:

- 

[5]

[5] https://www.facebook.com/page/147175095418718/search/?q=cold%20call



- 

[6]



- 

[7]

---

[6] https://www.facebook.com/PlumTreeCareers/
[7] *Id.*




Cold calling doesn't have to be daunting!

- 

[8]

Plum Tree Realty Careers

February 24 ·

Learn Ricky Carruth's techniques to master sales cold calling and circle prospecting!

- 

[9]

---

[8] https://www.facebook.com/PlumTreeCareers/

[9] *Id.*

23. In placing unsolicited text messages to consumers, Defendants send, or cause to be sent, multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number.

24. In response to these text messages, Plaintiff Byers files this lawsuit seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF BYERS'S ALLEGATIONS**

25. Plaintiff Byers registered his cell phone number on the DNC on February 5, 2008, for the express purpose that he would not receive unsolicited calls or text messages.

26. Plaintiff Byers's phone number is not associated with a business and is used for personal use only.

27. On January 22, 2021, around 9:45 AM, Plaintiff received a series of four unsolicited text messages from phone number 614-368-7500 to his cell phone, containing a hyperlink to Defendant Andrew Group's website and an image of their brochure:






28. The unsolicited text message received by the Plaintiff contained the following image of Defendant Andrew Group's marketing brochure carrying details of their subscription plans, their contact info, a link to their website www.TheAndrewsGroupLLC.com, and Defendant Plum Tree's logo:




29. On August 6, 2021, at 9:45 AM, Plaintiff again received a similar set of four unsolicited text messages as before, from the Defendants using the same phone number, 614-368-7500, soliciting Defendants' real estate service packages to the Plaintiff:

Friday, August 6, 2021

Hi! Good morning! My name is Rein and I'm the assistant for the Andrews Group.

9:45 AM

Our team lead Jenna sent you a voicemail but I wanted to send you a quick text as well in case you are busy. Would you be interested in listing your home on the MLS through our FLAT FEE LISTING SERVICE. We now offer it for just $299. With our service you get exposure on the MLS plus 200 additional

View all

Here is an attachment with a brochure. Feel free to check how to get more bang for your buck! When would be a good time to chat over the phone about our services?

OUR SERVICES

$299 FLAT FEE LISTING

- Get exposure on the Columbus MLS and 200 plus additional websites including Zillow, Trulia, Redfin, And realtor.com
- Get access to any and all real estate documents that you may need to easily negotiate the sale yourself.
- More exposure=More Showings = potential for higher offers and selling quicker!

$399 FLAT FEE LISTING

- Everything you get for $299 and more!
- Get access to Showing Time Service! Utilize the service agents use everyday to make selling your home as easy as 1-2-3!
- Comparable homes sent to your inbox so you can easily determine fair market value for your home!

The Andrews Group

plumtree

Contact us

614 424 1289

For more information check out our website @www.TheAndrewsGroupLLC.com

We sell your home your way!

$499 FLAT FEE LISTING

Get the most bang for your buck! Get everything you get with our $399 service and more. Word of mouth is one of the best ways to get your home sold fast. Let all your neighbors know your home is for sale with a professional for sale sign! We provide a lockbox which allows you to never be present for another showing!

2 OR 3% FULL SERVICE LISTING

Not having luck selling on your own? No Worries! Save money with our 2% package or be blown away by our 3% package that includes professional stager, cleaner, and photographer/videographer! Upgrade to our 2% or 3% package anytime and you'll get reimbursed the flat fee at closing!"

MMS 9:46 AM

30. Plaintiff Byers did not have a prior business relationship with the Defendants and never provided his phone number or his consent to receive any solicitation from or on behalf of the Defendants.

31. The unauthorized solicitation telephone text messages that Plaintiff received from Defendants, as alleged herein, have harmed Plaintiff Byers in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear

and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

32. Seeking redress for these injuries, Plaintiff Byers, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing text messages to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

33. Plaintiff Byers brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendants (or an agent acting on behalf of the Defendants) texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff, and (5) for whom Defendant claims it obtained the person's number in substantially the same manner it obtained Plaintiff's number.

34. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff Becker anticipates the need to amend the Class definitions following appropriate discovery.

35. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendants systematically sent, or caused to be sent, multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to send the texts;

(b) whether Defendants' text messages to Plaintiff and other consumers were sent for telemarketing purposes;

(c) whether Defendants' conduct constitutes a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

37. **Adequate Representation**: Plaintiff Byers will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Byers has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff Byers and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Byers nor his counsel have any interest adverse to the Class.

38. **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class

uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Byers. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

39. Plaintiff Byers repeats and realleges paragraphs 1 through 38 of this Complaint and incorporates them by reference.

40. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

41. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

42. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

43. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

44. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

45. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Byers, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Byers as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Byers requests a jury trial.

DATED this 14th day of November, 2021.

**BRYAN BYERS**, individually and on behalf of all others similarly situated,

By: /s/ *Brian Giles*

Brian Giles
brian@gilesfirm.com
LAW OFFICES OF BRIAN T. GILES, LLC
1470 Apple Hill Rd.,
Cincinnati, OH 45230
Telephone: (513) 379-2715

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

**Pro Hac Vice motion forthcoming*